Filed 8/5/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084252 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF2000210) |
| JIMMIE H. HARLOW, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Brian Hill, Judge (Retired Judge of the Santa Barbara Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) and John M. Monterosso, Judge. Conditionally reversed.

Stephanie A. Lickel, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

To qualify for mental health diversion under Penal Code section 1001.36,[1] criminal defendants must show they are both "eligible" and "suitable" for the program. Consistent with its intent to apply mental health diversion "as broadly as possible" (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149), the Legislature amended the statute effective January 1, 2023 to make it much easier for defendants to establish threshold eligibility (Stats. 2022, ch. 735, § 1). They are generally eligible for diversion if within the last five years "they 'ha[ve] been diagnosed' with a recognized mental disorder." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*), quoting § 1001.36, subd. (b)(1).) Such a diagnosis "creates a presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime." (*Sarmiento*, at p. 891.) The presumption can only be rebutted by "clear and convincing evidence that [the mental disorder] was *not* a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2), italics added.)

In this case, having been charged with one count of assault with a deadly weapon (§ 245, subd. (a)(1)) for an incident that occurred in April 2020, defendant Jimmie H. Harlow filed a motion for mental health diversion in September 2023. In support of the motion, he submitted a diagnosis of several mental disorders made by a qualified mental health expert two months earlier. Although the court found that Harlow had "a recent diagnosis of a qualified mental health disorder," it nonetheless concluded he was ineligible because it believed a diagnosis three years *after* the crime did not indicate that the disorder "played a significant factor in the charged offense." (Italics added.)

---

[1] All statutory references are to the Penal Code.

2

But the Legislature specifically addressed the timing of the qualifying mental health diagnosis, and it did not say that a diagnosis more than three years after the crime was inadequate or entitled to less weight. Indeed, what the statute says is that any qualifying diagnosis "within the last five years"—i.e., five years before the filing of the diversion request—creates a presumption that the mental disorder was at least a contributing factor to the defendant's criminal behavior. Here, Harlow's qualifying diagnosis was made two months before the filing of the motion, and the court was not free to apply a timing rule different than one the Legislature chose to enact. Nor does the record contain any other substantial evidence to support a finding by clear and convincing evidence that Harlow's diagnosed mental disorders were "not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

Because there was no clear and convincing evidence to rebut the statutory presumption that Harlow's diagnosed mental disorders contributed to his alleged criminal behavior, the court erred in concluding he was ineligible for mental health diversion. On remand, the court must address the separate and distinct requirements to determine if Harlow is suitable for diversion.

## FACTUAL AND PROCEDURAL BACKGROUND

Harlow lived in the same neighborhood as the victim, Daniel G. A prior incident, otherwise unexplained, had led to a "falling out" between the two. So when Daniel left his front yard one Sunday morning in April 2020 to retrieve the mail and saw Harlow with his skateboard walking his dog, he waited for Harlow to pass before proceeding to the mailbox. Harlow, who was a couple of houses in front of Daniel, turned around and said, "Are you following me?" Daniel stopped, held up his hands, and shook his head "no."

3

Harlow continued down the sidewalk; Daniel waited a few moments, then resumed walking to the mailbox. Harlow turned around again and yelled, "Are you following me?" He then raised his skateboard above his head and charged at Daniel. Daniel attempted to retreat behind a tree, but tripped and fell. Harlow hit him in the head and body with the skateboard.

Harlow was charged with one count of assault with a deadly weapon (§ 245, subd. (a)(1)) and related enhancements (§§ 12022, subd. (b)(1) & 12022.7, subd. (a)). In September 2023, he filed a pretrial request for mental health diversion (§ 1001.36) that included a diagnosis by a qualified mental health professional two months earlier indicating he suffered from three different mental disorders. The People filed no written response and offered no evidence, but orally opposed the request. Ultimately, the court denied the motion.[2] Vaguely referencing "something I discussed in earlier cases that some of you may have been privy to," the judge concluded that "[a] diagnosis that occurred three years later does not, based on the information I have, indicate to me that it played a significant factor in the charged offense three years prior."

Thereafter, Harlow pleaded guilty in exchange for an indicated three-year midterm sentence.

## DISCUSSION

Significant context for our decision here is provided by our earlier opinion in *Sarmiento*, *supra*, 98 Cal.App.5th 882. There, we focused on the 2022 amendments to section 1001.36, explaining why those legislative

---

[2]    Following his plea but before sentencing, Harlow filed a renewed motion for mental health diversion along with a related motion to withdraw his plea. The motions were based largely on additional mental health records that Harlow had recently obtained and wished to be considered. The court ultimately denied both motions before it sentenced Harlow.

4

changes made establishing a defendant's threshold eligibility for diversion a much less onerous task. No longer would "a defendant's eligibility . . . turn[] on findings to the court's 'satisfaction.' " (*Sarmiento*, at p. 891.) Rather, defendants are generally eligible if within the last five years they "ha[ve] been diagnosed" with a recognized mental disorder. (§ 1001.36, subd. (b)(1).) Beyond that, the amended statute creates a presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime. (*Sarmiento*, at p. 891.) The court must "find a causal connection 'unless there is clear and convincing evidence that [the mental disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' ([§ 1001.36], subd. (b)(2).)" (*Sarmiento*, at p. 891.) Assuming eligibility, the court must consider four additional factors to determine whether the defendant is also suitable for a diversion program. (§ 1001.36, subd. (c)(1)–(4).)

In practical terms, following the 2022 amendments, defendants with a proper mental health diagnosis will seldom be ineligible for diversion. The more difficult question will be determining whether they are suitable.

In this case, Harlow's diversion request included a psychological report from a psychiatric physician's assistant dated June 29, 2023 diagnosing him with major depressive disorder, posttraumatic stress disorder (PTSD), and generalized anxiety disorder. The trial court found that Harlow "does, in fact, have a recent diagnosis of a qualified mental health disorder." This not only satisfied the first statutory criterion for eligibility (§ 1001.36, subd. (b)(1)), it also should have significantly impacted the analysis of the second. This is because a qualifying diagnosis creates a presumption that the defendant's mental condition contributed to his criminal behavior.

And the prosecution can only rebut this presumption by producing clear and convincing evidence that there was no causal connection.

Here, however, the court became distracted by whether Harlow's mental health diagnosis preceded or postdated the crime. The judge ultimately concluded that because the diagnosis was not made until three years *after* the assault, he could find based on clear and convincing evidence that Harlow's more recent mental condition did not causally relate to his less recent criminal behavior.

It is a corollary to fundamental principles of separation of powers that courts must "apply the statute[s] as written unless doing so would yield absurd results." (*Ayers v. FCA US, LLC* (2024) 99 Cal.App.5th 1280, 1300.) To be eligible for mental health diversion, section 1001.36 as revised by the Legislature in 2022 requires a qualifying mental health diagnosis for the defendant "within the last five years." (§ 1001.36, subd. (b)(1).) The statute nowhere says that the diagnosis must *precede* the crime of which the defendant is accused. Indeed, it strongly implies the contrary. The last sentence of the relevant subdivision states that "[i]n opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence." (*Ibid.*) The express inclusion of "arrest reports" as something the expert can rely on indicates the diagnosis can be made after the crime. Indeed, it makes abundant practical sense to ensure that the diagnosis is relatively close in time to the treatment that will be the focus of the diversion program.

Once the defendant produces a timely mental health diagnosis, the statute requires that the court presume the crime with which the defendant is charged was causally related to his mental condition. The burden then

6

shifts to the prosecution to show by clear and convincing evidence that the defendant's diagnosed mental disorder was not a contributing factor. Here, the People offered no evidence in opposition to Harlow's motion. Referring to the psychiatric report that included the diagnosis, they argued there was "nothing showing the defendant suffered from any of these [disorders] at the time of the incident." But argument by counsel "is not evidence in the case and cannot be relied upon to support the trial court's order." (*Estate of Pittman* (1980) 104 Cal.App.3d 288, 295.) In any event, it misplaces the burden of proof. The statutory presumption means it was the *People* who were required to show that one or more of Harlow's diagnosed disorders did *not* contribute to causing the incident. They did not do so.

Apparently referring to two snippets of Daniel's testimony at the preliminary hearing,[3] the trial court also commented that "the alleged assault was more motivated by bad blood and friction and hostility between Mr. Harlow and the victim." Relying on this comment, the Attorney General argues the court "properly found that the hostile relationship between appellant and Daniel G. led to the assault." We question whether the court intended by this untethered comment to find by clear and convincing evidence that Harlow's diagnosed mental condition did not *contribute* to the

---

[3]    In response to the prosecutor's question as to whether he followed the defendant "looking to start trouble," Daniel's narrative strayed: "But he frequently would skate up and down the street, and there were—there was another incident that sort of led up to our falling out." The prosecutor then reminded Daniel, "[W]e're just going to talk about the incidents that occurred on this day." Later, on cross-examination, Daniel corrected some confusion on the part of defense counsel: "Not that day. I think maybe you misunderstood me. Prior to this incident, there was something leading up to us not getting along."

7

incident with Daniel.[4]  Whatever the court meant, the prosecution offered no *evidence* about the prior incident—apart from Daniel's acknowledgement that there was one—and this falls far short of clear and convincing evidence to rebut the statutory presumption.

It probably goes without saying that Harlow faces a more significant hurdle in establishing he is *suitable* for mental health diversion.  (§ 1001.36, subd. (c).)  But he should not have been denied participation in the diversion program based on being *ineligible*.

## DISPOSITION

The judgment is conditionally reversed, and the matter is remanded to the trial court with directions to find Harlow eligible and consider whether he is suitable for mental health diversion under section 1001.36.  If the trial court determines Harlow is suitable, it may grant diversion.  If the court determines he is not suitable for diversion, or if he does not successfully complete diversion once granted, it shall reinstate the judgment of conviction.

DATO, Acting P. J.

WE CONCUR:

DO, J.

CASTILLO, J.

---

[4]     The record provides no support for the conclusion that irrational hostility or paranoia is inconsistent with some or all of Harlow's diagnosed mental health conditions.

8